In re Tony McKelvan MILES, Eloise Miles f/d/b/a Bluegrass Siding and Roofing, Inc., Debtors.

**QUALITY ALUMINUM PRODUCTS, INC., Plaintiff,**

v.

**Tony McKelvan MILES f/d/b/a Bluegrass Siding and Roofing, Inc. and f/d/b/a Bluegrass Builders, Inc., Defendant.**

**Bankruptcy No. 3–82–01030.
Adv. No. 3–82–0314.**

United States Bankruptcy Court, W.D. Kentucky.

Feb. 1, 1983.

George E. Riggs, Jr., Louisville, Ky., for defendant and debtors.

Joseph A. Hammer, Louisville, Ky., for plaintiff.

## MEMORANDUM AND ORDER

G. WILLIAM BROWN, Bankruptcy Judge.

The above-styled matter came before the Court for trial on January 31, 1983, and the issue here is whether the debt due to plaintiff in the sum of $27,721.14 is dischargeable pursuant to 11 U.S.C. § 523(a)(2).

The evidence as presented disclosed that sometime in 1979 the debtor attempted to purchase a corporation known as Bluegrass Builders, Inc., and paid the purchase price therefor but failed to receive the corporate records. This entity was simply a shell corporation and owned no assets. Thereafter, plaintiff, knowing the debtor personally and having had a prior credit history with the corporation, continued to do business with and invoice orders to the corporation. The debtor, unable to secure the corporate records, then assumed a noncorporate identity known as Bluegrass Siding and Roofing, Inc. Continued business transactions between the parties were carried on by plaintiff's invoicing orders to the corporation but payments therefor being made by Bluegrass Siding and Roofing, Inc. It was established that from 1979 through 1981, and continuing at least in part through 1982, purchases in excess of $360,000.00 were made, and that at the date of the filing of the debtor's petition there was due and owing the sum of $27,721.14 to plaintiff.

In mid-1981, a check payable to plaintiff and drawn on Bluegrass Siding and Roofing Company, Inc., in the sum of $7,346.34 was returned for insufficient funds, and thereafter on September 21, 1981, October 18, 1981, and December 20, 1981, replacement checks in an identical amount were issued and likewise returned for insufficient funds.

Testimony of Mr. O'Neal, President of the plaintiff corporation, established that

he extended to Bluegrass Builders, Inc., upon the debtor's purported purchase of said corporation, an extended line of credit, and that payments on this account were thereafter made in more or less timely fashion; that the initial payment, the dishonored check in question, was given on the outstanding balance due on the account and not for a specific purchase contemporaneous with the issuance of the tainted check. Repeated payment efforts thereafter were evidenced by the replacement checks previously referred to.

Mr. O'Neal further testified that credit continued to be extended after the issuance of the original "NSF" check, and payments were received on the account from time to time until shortly prior to the filing of the debtor's bankruptcy, at which time the sum here in question of $27,721.41 was due and owing. Plaintiff alleges that the debt is nondischargeable pursuant to § 523(a)(2) on the basis: (1) that plaintiff was induced into extending the line of credit to Bluegrass Builders, Inc., on debtor's representation that he was the owner of said corporation, when in fact, stock evidencing his ownership therein was never issued to the debtor, or in the alternative, (2) that the check returned by the bank for insufficient funds and its replacements are evidence in writing sufficient to meet the requirements of § 523(a)(2)(B), and therefore, this debt as it relates to debtor should be declared nondischargeable.

Debtor, by way of defense, alleges that the debt is dischargeable since the actions complained of did not result from a statement in writing as required by § 523(a)(2)(B); that the line of credit was extended to a corporation that was at least equitably owned by the debtor, and accordingly, the debtor is not personally liable for said corporation's debt; and finally, that if the debtor is personally liable, the debt did not arise as a result of false pretenses, false representations, or actual fraud.

11 U.S.C. § 523(a)(2)(A), (B) provides as follows:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

It is uncontroverted that at the time the first dishonored check was tendered to plaintiff, it was presented and accepted as payment on an open line of extended credit. The additional sum which was reflected as due and owing on the date of filing was the credit line balance arising out of the natural course of doing business between the parties. The only offer of proof bringing these issues under the provisions of § 523 is the claim by plaintiff that it was misled into extending this line of credit by the mistaken belief that the debtor was the owner of Bluegrass Builders, Inc. The uncontroverted testimony established that the debtor, at the time the credit line was established, did seek to purchase the said corporation, paid the purchase price therefor, and but for the physical transfer of ownership of the stock therein was in fact the equitable owner of the corporation.

Upon being unable to obtain physical possession of the corporate records, the debtor thereafter continued dealing with plaintiff under the assumed name of Bluegrass Siding and Roofing Company, Inc., which apparently was not challenged by the plaintiff although it continued to invoice in the corporate name. Payments on the account, however, were tendered and received from Bluegrass Siding and Roofing Company, Inc., and its checks are those which are in

**10**

question here. Substantial sums were paid on account in this fashion in an amount in excess of $350,000.00 during a period of more than three years.

While the course of dealing between the parties is unique and unusual, the arrangement was adopted and ratified in all respects save those issues now in dispute. Payment of such substantial sums by an entity not legally liable on the corporate credit line should have given the plaintiff cause for concern and placed on plaintiff a duty to inquire with whom it was dealing, and to whom it should look for payment of its account. Its failure to so inquire at least contributed to the sum listed by the debtor at the time of the filing of his petition, and brings into question the wisdom of plaintiff's continuing to extend credit to a corporation whose accounts were being paid by remittances from the debtor's alter ego, Bluegrass Siding and Roofing, Inc.

It is the opinion of the Court that the debtor, as a result of payment in full of the sales price of the corporation, was the *de facto* owner thereof, and the burden of proof upon plaintiff to establish the existence of the requisite elements of § 523(a)(2)(A) has not been met. It is further the opinion of the Court that the dishonored check and its replacements were issued on an existing account, were tendered for an antecedent debt, and therefore, the debtor, operating under the name of Bluegrass Siding and Roofing, Inc., did not at that time obtain money, property, services, or an extension, renewal or refinance of credit by their issuance.

The Court further finds that there being no proof showing that the additional sum reflected as due and owing on the date of filing of this petition was procured by misrepresentations or false pretenses, false representations, or actual fraud, finds the debt to be dischargeable.

This Memorandum and Opinion constitutes Findings of Fact and Conclusions of Law pursuant to Rule 752, R.B.P.

For the reasons hereinabove denoted, and the Court being otherwise sufficiently advised,

IT IS ORDERED AND ADJUDGED that plaintiff's complaint be and the same hereby is dismissed with prejudice. This is a final order.